## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**SOMAT TRANSPORTATION, INC.**

**Plaintiff,**                                    **CASE NO.: _____**

**v.**

**INTERSTATE COMMERCE FINANCIAL
CREDIT CORPORATION**

**Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW**, the Plaintiff, SOMAT TRANSPORTATION INC. ("SOMAT" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendant, Interstate Commerce Financial Credit Corporation ("ICFCC" or "Defendant") and collectively the "Parties". In support hereof, Plaintiff states as follows:

### INTRODUCTION

1.      This is an action necessitated by Defendant's refusal to pay sums owed to Plaintiff.

2.      Pursuant to the Broker's or Freight Forwarder's Trust Fund Agreement under 49 U.S. Code § 13906 (hereafter the "Agreement") entered between the Parties on or about September 19, 2014, Plaintiff paid Defendant to manage the security and trust fund for the protection of motor carriers or shippers (including holding in trust/making assets readily available to pay claims).

3.      Upon cancellation of the Agreement, the money paid by Plaintiff and held in trust is to be refunded. A true and correct copy of the Agreement is attached hereto as **Exhibit "A"** and fully incorporated herein by this reference.

4.      Defendant cancelled the Agreement without the required notice and failed to refund the monies held in trust as set forth more fully below.

5.      Plaintiff pursues this civil action against Defendant seeking damages for breach of the Agreement, and, in the alternative, unjust enrichment as set forth more fully below.

## PARTIES / JURISDICTION AND VENUE

6.      Plaintiff, SOMAT, is a registered Motor Carrier/Broker with the Department of Transportation.

7.      Plaintiff provides freight delivery, logistics, and other transportation services to its customers.

8.      Plaintiff administers a large fleet of commercial trucks, flatbeds, and trailers to provide high quality service in the transportation industry.

9.      Plaintiff is a Florida Corporation having its principal place of business at 21919 US 19 North, Clearwater, Pinellas County, Florida.

10.     Defendant, ICFCC, was generally engaged in the business of finance lending and brokering.

11.     Defendant was a financial lender and broker that provided BMC-85[1] trust funds to property brokers, freight forwarders, and household goods brokers.

---

[1] A BMC-85 is a type of trust fund that is used to assure compliance with the FMCSA regulations. The $75,000 is used to protect a freight broker's partners and customers. *See Generally* https://www.fmcsa.dot.gov/registration/broker-registration

12.    Defendant is a corporation, organized under California law, with its principal place of business at 18000 Studebaker Road, Suite 700, Cerritos, California.

13.    The amount in controversy, exclusive of interest and costs and attorney fees, exceeds $75,000.00.

14.    Diversity of citizenship exists and this Court therefore has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

15.    Defendant is subject to this Court's personal jurisdiction with respect to this civil action pursuant to Florida Statutes § 48.193, because Defendant entered into contracts in this state which gave rise to the causes of action.

16.    Further, Defendant maintained regular and systematic contacts with the State of Florida for the transmission of business information used in connection to their relationship with Plaintiff and these systematic and regular contacts satisfy both Constitutional due process and the "certain minimum contacts: test under *International Shoe*[2].

17.    Defendant's activities in the state of Florida are extensive and pervasive. For example, Defendant derived revenue from established commercial relationships in Pinellas County, Florida, including revenue derived from the Plaintiff, beginning in 2009.

18.    Defendant engaged in substantial and not isolated activity within the State of Florida. Additionally, Defendant had continuous and systematic general business contacts within Pinellas County and the State of Florida throughout its agreements with Plaintiff.

---

[2] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945).

19.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the claims occurred in Pinellas County, Florida, within the Middle District of Florida.

20.     Defendant was fully aware that their agreements with Plaintiff subjected them to continuous systematic contacts with the State of Florida.

21.     Moreover, there is more than a causal connection between the Defendant's activities in Florida and the Plaintiff's causes of action.

## GENERAL ALLEGATIONS

22.     Pursuant to the terms of the foregoing Agreement, Plaintiff (the Trustor under said Agreement) would pay Defendant (the Trustee under said Agreement) to manage the security and trust fund for the protection of motor carriers or shippers, including holding in trust and making assets readily available to pay claims. *See* **Exhibit A**.

23.     The Agreement proceeded without issue for approximately four (4) years.

24.     Thereafter, on or about October 15, 2018, Defendants stopped accepting payments without notice to Plaintiff and without cause.

25.     Pursuant to the terms of the Agreement and 49 U.S.C. § 13906(5)[3], thirty (30) days written notice is required for cancellation of the Agreement. *See* **Exhibit A**.

---

[3] 49 U.S.C. § 13906 is a statute specific to the security of motor carriers, motor private carriers, brokers, and freight forwarders. 49 U.S.C. § 13906 (5) is titled "Cancellation Notice" and provides:

If a financial security required under this subsection is canceled:

26.    The Agreement provides that "Trustee acknowledges the receipt of the sum of Seventy-Five Thousand Dollars ($75,000) for a Broker or Freight Forwarder, to be held in trust under the terms and conditions set forth herein." **Exhibit A ¶ 4**.

27.    Plaintiff has attempted to contact Defendant numerous times to no avail. The Agreement provides that "Trustee shall maintain a record of all financial transactions concerning the fund, which will be available to Trustor upon request and reasonable notice and to the FMCSA upon request." **Exhibit A ¶ 11**.

28.    Defendant has not paid the debts still owed to Plaintiff pursuant to the Agreement.

29.    Plaintiff has satisfied all conditions, covenants, and promises under the Agreement which it was obligated to perform except those which it was excused and/or prevented from performing.

30.    Despite Plaintiff's satisfaction of its obligations and its numerous requests for repayment, Defendant has not paid Plaintiff the sums due and owing under the Agreement.

31.    Plaintiff has been unable to reach Defendant for several months.

32.    Based on the Plaintiff's inability to contact the Defendant, Plaintiff reasonably believes that Defendant, ICFCC, has either closed or suspended business. This belief is set forth in more detail below.

---

(A) the holder of the financial security shall provide electronic notification to the Secretary of the cancellation not later than 30 days before the effective date of the cancellation; and
(B) the Secretary shall immediately post such notification on the public Internet web site of the Department of Transportation.

33.    At all times material hereto, Ralph St. James ("St. James"), aka "Raphael Alvarez" was the President and CEO of ICFCC. St. James died on December 19, 2019.  ICFCC began neglecting their obligations to the laws of California and their clients leading up to and following the death of St. James. For example, Defendant was required to file an Annual Report with The Commissioner of Business Oversight ("Commission") by March 15th of each year pursuant to Financial Code section 22159, CFL.

34.    ICFCC did not file its Annual Report as required by California Financial Code section 22159.

35.    As a result, the Commission summarily revoked ICFCC's Finance Lenders and/or Brokers license(s) on April 3, 2020 through a License Revocation Order. A true and correct copy of the License Revocation Order is attached hereto as "**Exhibit B"** and fully incorporated herein by reference.

36.    The License Revocation Order states that:

> [ICFCC is] hereby ordered and directed to discontinue making or brokering of any loan made pursuant to California Financing Law. (Financial Code § et. seq.) [ICFCC is] also ordered and directed to discontinue all activity conducted pursuant to Financial Code sections 22340 and 22600 within 60 days of the effective date of this Order.

**Exhibit B ¶¶ 6-9.**

37.    Despite the Plaintiff's requests, Defendant has failed to respond, much less provide the agreed-upon financial records.

38.    Plaintiff has retained the undersigned and is responsible for paying its reasonable attorney's fees and costs.

39.    Plaintiff is entitled to recover attorney's fees and costs against Defendant pursuant to Florida Statutes and 49 U.S.C § 13906(2)(C)[4].

## COUNT I – BREACH OF CONTRACT

40.    Plaintiff re-alleges and incorporates paragraphs 1 through 39 of this Complaint, as though fully set forth herein.

41.    The Agreement is a valid and enforceable contract between Plaintiff and Defendant. *See* **Exhibit A**.

42.    Pursuant to the Agreement, Plaintiff is entitled to payment of the monies held in trust.

43.    Plaintiff and Defendant expressly agreed to the terms of the Agreement, which was signed and executed on September 19, 2014.

44.    St. James signed the Agreement and is listed as Trustee and CEO of ICFCC. Angelica Mendez ("Mendez") also signed the Agreement and is listed as the Asst-Trustee. St. James and Mendez were agents, servants, or employees of ICFCC acting within the full scope and course of said agency.

45.    Plaintiff performed all conditions, covenants, and promises under the Agreement which it was obligated to perform except those which it was excused and/or prevented from performing.

46.    Defendant failed to provide any written notice of cancellation.

---

[4] 49 U.S.C. § 13906 (2)(C) states that "[i]n any action against a surety provider to recover on a claim described in subparagraph (A), the prevailing party shall be entitled to recover its reasonable costs and attorney's fees."

47.   Defendant's failure to provide notice was a material breach of the express terms of the Agreement which state that "[t]his agreement may be canceled at any time upon thirty (30) days written notice by the Trustee or Trustor to the FMCSA . . . [t]he Trustee and/or Trustor specifically agrees to file such written notice of cancellation." **Exhibit A ⁋ 9.**

48.   Defendant failed to pay any sum or sums held is trust pursuant to the Agreement.

49.   Additionally, Defendant materially breached the Agreement by failing and refusing to refund monies held in trust pursuant to said Agreement.

50.   At this point in time, the principal amount of $76,055.53 remains due and owing from Defendants to Plaintiff despite demand by Plaintiff for payment in full.

51.   As a direct and foreseeable result of Defendant's breaches, Plaintiff has been damaged in the sum of $76,055.53, plus interest thereon at the maximum legal rate from November 15, 2018.

**WHEREFORE,** Plaintiff demands judgement against Defendant in an amount to be established at trial, along with reasonable attorney's fees, pre judgement interest, and the costs of this action, and for such other relief as this Court deems just and proper.

## COUNT II – UNJUST ENRICHMENT (IN THE ALTERNATIVE)

52.   Plaintiff re-alleges and incorporates paragraphs 1 through 39 of this Complaint, as though fully set forth herein.

53.     In the alternative to the above, and if this Court was to determine that no contract exists between Plaintiff and Defendant, Plaintiff brings a cause of action of unjust enrichment against Defendant.

54.     Plaintiff has conferred a benefit onto the Defendant by making payments to Defendant for compliance with the FMCSA regulations and pursuant to the terms of the Agreement which provides that ". . . this Trust Fund Agreement is written to assure compliance by the Trustor as either a licensed Broker or licensed Freight Forwarder of Transportation by motor vehicle with 49 U.S.C 13906(b) . . . ." *See* **Exhibit A**.

55.     Defendant had knowledge of this benefit.

56.     Defendant voluntarily accepted and retained the benefit of Plaintiff's monthly payments.

57.     Under the circumstances, it is inequitable for Defendant to retain the benefit of payments received from Plaintiff, insofar as Plaintiff received no value and was harmed by Defendant's failure to comply the terms of the Agreement.

58.     Plaintiff has been damaged in the amount of approximately $76,055.53; the amount Plaintiff paid to Defendant pursuant to the terms of the Agreement, plus re and post judgment interest thereon at the maximum legal rate from November 15, 2018.

**WHEREFORE**, Plaintiff demands judgement against Defendant in an amount to be established at trial, along with reasonable attorney's fees, pre and post judgement interest, and the costs of this action, and for such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Dated: July 2ND, 2020

**LAW OFFICE OF ROBERT ECKARD
& ASSOCIATES, P.A.**

**ROBERT D. ECKARD, B.C.S.**
**FBN:  0162655**
**TARA M. MCDONALD, ESQ.**
**FBN: 110584**
**KRISTIN M. RHODUS, ESQ.**
**FBN: 88792**
**RAPHAEL J. CUA, ESQ.**
**FBN: 0110584**
**3110 Alternate U.S. 19 North**
**Palm Harbor, FL  34683**
**(727) 772-1941 Telephone**
**(727) 771-7940 Facsimile**
**Robert@RobertEckardLaw.com**
**Tara@RobertEckardLaw.com**
**Kristin@RobertEckardLaw.com**
**Raphael@RobertEckardLaw.com**
*Counsel for Plaintiff*
